## ABE LITTLE v. THE STATE.

### No. 2265. Decided March 13, 1901.

**1. Jury Law—Talesmen.**

Where most of the regular panels for the week were out considering other cases, it was not error for the court to order talesmen to be summoned to fill out the jury, there being no motion by defendant to postpone and await their return into court.

**2. Evidence—Statements of Defendant—Res Gestae.**

A defendant is not entitled to prove his statements made to an officer several hours after the alleged offense, which were no part of any conversation drawn out by the State and being clearly no part of the res gestae.

**3. Assault with Intent to Murder—Intoxication from Use of Liquor—Specific Intent—Charge.**

On a trial for assault with intent to murder, it was not error for the court to refuse to give special requested instructions to the effect that, if defendant's mind was in such condition as rendered him incapable of forming the specific intent to kill, they should acquit of assault with intent to murder. The only effect of testimony showing intoxication as evidence of want of specific intent, in assault to murder, would, at most, be to mitigate the penalty; it does not operate an acquittal.

**4. Same.**

In an assault to murder, the specific intent need not be formed in a cool, deliberate mind; and, in this character of case, where the act indicates the purpose, the intent is presumed; and the fact that defendant was drunk will not be considered.

**5.—Same—Drunkenness—Insanity.**

Mere drunkenness, short of insanity, is no defense to crime.

**6. New Trial—Newly Discovered Evidence—Diligence.**

A motion for new trial based upon newly discovered evidence which shows a want of reasonable diligence, and which is not supported by the affidavits of the witnesses to the newly discovered testimony, will not be entitled to consideration.

APPEAL from the District Court of McLennan. Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for assault with intent to murder; penalty, three years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder one J. E. Harwell, on the 6th day of October, 1900.

Appellant and Harwell, the prosecutor, lived in the little village of Rosenthal, some ten or twelve miles from the city of Waco. Harwell was a white man and was engaged in the mercantile business. Defendant was a negro. The parties had never had any trouble or difficulty—were friendly—and defendant traded at Harwell's store. Defendant's reputation was that of a peaceable, sober negro. On the morning of the day of the difficulty defendant went in a buggy with his wife to Waco. At Waco he commenced drinking. It was proved that he took twelve glasses of beer and several drinks of gin at "The Two Brothers," one of the saloons he had patronized. Before starting back to Rosenthal he bought a bottle of gin, and, on the road back, his wife testified, he took one or two drinks from this bottle. When they reached the suburbs of the village they stopped and got out at his mother-in-law's. A wordy altercation soon occurred between defendant and his mother-in-law. Defendant left the house, and, after having been gone some little time, returned, having a pistol and shotgun. His wife seized him, and during their struggle the mother-in-law fled. As soon as defendant could get loose from his wife he took a shot at the fleeing mother-in-law, but, fortunately, missed her. He and his wife then got into the buggy and started down the street through the village, defendant yelling and pointing his pistol from side to side of the street and snapping it time and again. When he reached Harwell's store he stopped and asked Harwell, who was standing in front of the store, to sell him some gun cartridges. Harwell, seeing his drunken condition, told him he would not sell him the cartridges. Defendant then drove off a short distance, returned, and when within a short distance of Harwell, snapped his pistol once or twice at him. Harwell rushed into the back room of the store, got his trusted double-barreled shotgun, and, as he started back, defendant fired a shot at him through the store which missed him. Harwell hollooed to defendant's wife to get out of the way. She jumped from the buggy and ran. Harwell fired, killing the horse in the buggy. Defendant fell from the buggy, and when he rose and was running off, Harwell gave him the contents of his other barrel, which was loaded with bird shot. A complaint was sworn out against defendant, and when the precinct constable, with a warrant for his arrest, found defendant several hours afterward at his (defendant's) mother's, in bed, asleep, defendant was still bleeding from his wounds. He was waked up by the officer and arrested. Defendant then made a statement as to the matter to the officer, which statement he sought to introduce in evidence at the

trial, but it was excluded upon the ground that it was not res gestae and was self serving declarations.

*J. B. Scarborough,* for appellant

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of an assault with intent to murder,. and his punishment assessed at three years confinement in the penitentiary, and prosecutes this appeal.

The court did not commit any error in regard to the jury. The regular panels for the week were out, considering two other cases. No motion was made to postpone to await their return into court. But appellant simply objected to the court ordering talesmen to be summoned to fill out the panel, in connection with those of the regular jury who were present. This, as we understand it, is in accordance with the practice under our statutes. Leslie v. State (Texas Crim. App.), 47 S. W. Rep., 367.

Nor did the court err in refusing to permit defendant to prove by the officer statements which he made to the officer several hours after the alleged offense. This was no part of the res gestae, nor was it any portion of any conversation brought out by the State.

Appellant complains of the court's charge on the subject of insanity produced by. the recent use of intoxicating liquors, which is in accordance with the provisions of our Penal Code (article 41), and also complains of the action of the court in refusing to give certain special requested instructions with reference to the state of mind of defendant, produced by intoxication, in connection with his intent. That is, the court was requested to instruct the jury, if they believed from the evidence that defendant's mind was in such condition, from any cause, that he was incapable of forming the deliberate intent to kill the assaulted party, to acquit of assault with intent to murder. Appellant, in this connection, insists that where intent enters into an offense, and the evidence tends to show that the condition of the person's mind from the use of whisky is such as to show him incapable of forming the intent necessary to commit the crime, the jury should be fully instructed to this effect. In murder cases, evidence of temporary insanity produced by the recent use of intoxicating liquors is admitted for the purpose of determining the degree of murder, and also in mitigation of the penalty, so that this character of evidence will not reduce a homicide which would otherwise be murder in the first degree below murder in the second degree; and, inasmuch as an assault with intent to murder may be either upon express or implied malice, the only effect this character of testimony would have in a case of assault with intent to murder, would be to mitigate the penalty. That is, conceding that article 41, Penal Code, defining the rights of a defendant who sets up temporary insanity produced by the recent use of intoxicating liquor, does not

unduly. limit or abridge some fundamental right of the citizen. At common law, drunkenness produced by the recent use of whisky, although it produce temporary insanity, was no defense to crime; and our statute on the subject seems to have been passed with that idea in view. And in Evers v. State, 31 Texas Criminal Reports, 318, the legality of this statute appears to have been the subject of consideration. In that case it was held valid, and the rule there laid down has since been followed. Appellant, however, insists that in a case of assault with intent to murder the party must have the specific intent of his malice aforethought to take life, and that an insane person, whether the insanity is produced by drunkenness or other cause, is incapable of forming the specific intent. As we have seen, this specific intent need not be formed in a cool and deliberate mind, but may originate in a mind inflamed or ruffled by passion; and in this character of case, where the act indicates the purpose, the intent is presumed. That is, where the law imputes specific intent from the commission of the particular act, the fact that defendant was intoxicated at the time he committed the act will not be considered. The authorities all seem to hold that temporary insanity produced by the recent use of whisky is no answer to a charge of murder in the second degree. For collation of authorities, see 17 Am. and Eng. Enc. of Law, new ed., p. 413, note 9. Aside from this, all of the authorities hold that mere drunkenness, short of insanity, is no defense to crime; and this is in harmony with our statute on the subject. An examination of the record here does not show or tend to show a case of insanity, but merely shows an ordinary case of voluntary drunkenness; and we do not feel called upon to review the question, much less to overrule our former decisions construing article 41, Penal Code.

We do not think there was anything in the newly discovered evidence. By the use of reasonable diligence, it appears, appellant might have ascertained how the shot was fired before the trial. There is not appended to the application the affidavits of the witnesses to the newly discovered testimony. Besides this, the evidence showed that appellant had already assaulted the prosecutor and snapped his pistol at him once or twice before the shot was fired; and, even if the newly discovered evidence would show that the shot was fired in the ground, this might merely suggest evidence of bad markmanship. The judgment is affirmed.

*Affirmed.*